Alexander E. Potente, State Bar No. 208240
alex.potente@clydeco.us
Yevgenia Altman Wiener, State Bar No. 259883
yevgenia.wiener@clydeco.us
CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800
Facsimile:  (415) 365-9801

Attorneys for Plaintiff
THE TRAVELERS INDEMNITY
COMPANY OF CONNECTICUT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SKY HIGH INVESTMENT COMPANY LLC, a California Limited Liability Company, MORAD BEN NEMAN, an individual, NEMAN REAL ESTATE INVESTMENTS, LLC, a California Limited Liability Company, and DOES 1-10<br><br>Defendants. | Case No.<br><br>**THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT'S COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff The Travelers Indemnity Company of Connecticut ("Travelers"), for its complaint against Sky High Investment Company LLC, Morad Ben Neman, Neman Real Estate Investments, LLC, and Does 1 through 10, alleges as follows:

## JURISDICTION

1. Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the parties are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2), in that this action seeks a declaration of the parties' rights and obligations under contracts of insurance issued in this district and delivered to the policyholder's offices in Los Angeles, California.

**PARTIES**

3. Travelers is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut, and is duly authorized to transact insurance in the State of California.

4. Defendant Sky High Investments Company LLC ("Sky High") is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Los Angeles County, California.

5. Defendant Morad Ben Neman ("Neman") is an individual resident of Los Angeles County, California and, on information and belief, was the Chief Executive Officer of Sky High at relevant times.

6. Defendant Neman Real Estate Investments, LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Los Angeles County, California.

7. Travelers is ignorant of the true names and capacities of each of the defendants designated in this complaint as a Doe defendant. Travelers is informed and believes and on that basis alleges that each of the Doe defendants is in some manner interested in the controversy alleged in this complaint. Upon learning the true name and capacity of each of the Doe defendants, Travelers will amend this complaint accordingly.

8. Travelers is informed and believes and thereon alleges that at all times relevant hereto each of the defendants, including without limitation the Doe defendants, was the agent, affiliate, officer, director, manager, principal, alter-ego and/or employee of the other defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment and actively

1  participated in, or subsequently ratified and adopted, or both, each and all of the acts
2  or conduct alleged herein, with full knowledge of all the facts and circumstances.

## GENERAL ALLEGATIONS

<u>The Application and Underwriting Process</u>

9.  Defendants sought to insure commercial properties in Los Angeles, California, including buildings located at 921-945 E. Pico Boulevard, Los Angeles, California, 90021 (the "subject premises.")

10. On or around January 28, 2014, Defendants submitted the Commercial Insurance Application to Travelers (the "Application"). A true and correct copy of the Application is attached hereto as Exhibit A. In the section entitled "NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)," the Application states as follows: "BUILDING OWNER – LESSOR'S RISK ONLY. BUILDING IS OCCUPIED BY CLOTHING MANUFACTURERS, CLOTHING WHOLESALE DISTRIBUTORS, AND OFFICES." Prior to each subsequent policy renewal, Defendants submitted applications which contained identical descriptions of operations.

11. On the last page of the Application, Defendants left blank the section entitled "APARTMENTS/CONDOMINIUMS/HOTELS/MOTELS," which requested that Defendants provide information regarding the number of apartment units on the subject premises.

12. As part of the underwriting process, Travelers sent Carl J. Roberg, CSP, Senior Regional Risk Control Consultant, to survey the subject premises. Following his inspection, on or around March 12, 2014, Mr. Roberg prepared the Real Estate – Risk Assessment Report (the "Risk Assessment Report"). A true and correct copy of the Risk Assessment Report is attached hereto as Exhibit B.

13. The Risk Assessment Report conveyed the following information obtained by Mr. Roberg from the property manager and/or owner of the subject premises regarding the occupancy of the subject premises: "The uppers [sic] floors

are mainly small industrial studio lofts (1,000 to 5,000 sq.ft) used by designers and artist [sic] – some office space…Tenants have access to their space 24 hours/day – 7 days/week however management reports that they are not living spaces with beds/kitchens…"

14. The Risk Assessment Report further indicated that "[a]lthough tenants have access 24/7 they are not permitted to live there – these are not apartments – live safety system not appropriate for habitation type units.  Although we did not have access to the individual units – contact stated that the fire department inspects every unit every year and there are no tenants using the space for living units."

<u>Travelers' Policies</u>

15. Based on the information contained in the Application and the Risk Assessment Report, Travelers issued the following primary commercial package policies to the named insured Sky High Investments Company LLC:

- Y-630-9D886825-TCT-14, effective 03/31/2014 - 03/31/2015
- Y-630-9D886825-TCT-15, effective 03/31/2015 - 03/31/2016
- Y-630-9D886825-TCT-16, effective 03/31/2016 - 03/31/2017
- Y-630-9D886825-TCT-17, effective 03/31/2017 - 03/31/2018
- Y-630-9D886825-TCT-18, effective 03/31/2018 - 03/31/2019[1]

16. The primary policies referenced above are substantially identical in all relevant respects and are referred to herein collectively as the "Travelers Primary Policies."  Attached hereto as Exhibit C is a true and correct copy of Policy No. Y-630-9D886825-TCT-14.

17. The Travelers Primary Policies provided, for their respective policy periods, commercial general liability insurance subject to an Each Occurrence Limit of $1,000,000, a Products-Completed Operations Aggregate Limit of $2,000,000,

---

[1] This policy was cancelled effective January 9, 2019.

and a General Aggregate Limit (other than Products-Completed Operations) of $2,000,000.

18. Travelers also issued the following umbrella policies to the named insured Sky High Investments Company LLC:

- YSM-CUP-9D886824-TIL-14, effective 03/31/2014 - 03/31/2015
- YSM-CUP-9D886824-TIL-15, effective 03/31/2015 - 03/31/2016
- YSM-CUP-9D886824-TIL-16, effective 03/31/2016 - 03/31/2017
- CUP-1J35336A-17-14, effective 03/31/2017 - 03/31/2018
- CUP-1J35336A-18-14, effective 03/31/2018 - 03/31/2019[2]

19. The umbrella policies referenced above are substantially identical in all relevant respects and are referred to herein collectively as the "Travelers Umbrella Policies." Attached hereto as Exhibit D is a true and correct copy of Policy No. YSM-CUP-9D886824-TIL-14.

20. The Travelers Umbrella Policies provided, for their respective policy periods, commercial general liability insurance subject to an Each Occurrence Limit of $10,000,000, a Products-Completed Operations Aggregate Limit of $10,000,000, and a General Aggregate Limit (other than Products-Completed Operations) of $10,000,000.

21. The Travelers Primary Policies and the Travelers Umbrella Policies are collectively referred to herein as the "Travelers Policies."

22. The Travelers Policies provided coverage pursuant to all of the terms, conditions, limitations, exclusions, and endorsements contained in each policy. In addition to the named insured Sky High, Neman and Neman Real Estate Investments, LLC qualify as insureds under the Travelers Policies in certain limited capacities relevant to this action.

---

[2] This policy was also cancelled effective January 9, 2019.

23. The Travelers Policies insured specific locations and buildings listed on the Schedule of Locations and Buildings, which included, among others, the subject premises.

Underlying Lawsuits

24. In 2018, Defendants tendered to Travelers four lawsuits filed against Defendants by the tenants of the subject premises.

25. On March 3, 2017, Paul Duenas filed a lawsuit in Los Angeles Superior Court, Case No. BC651926, styled *Paul Duenas v. Sky High Investments Company, LLC, et al.* (the "*Duenas* Lawsuit"). Mr. Duenas alleged that Sky High and Neman illegally converted the subject premises into residential apartment units. Mr. Duenas claimed that he was a residential tenant at the subject premises since February 2015. Mr. Duenas further alleged that on August 17, 2016, the City of Los Angeles determined that Defendants illegally converted three floors of the subject premises into apartments, among other citations. A true and correct copy of the complaint in the *Duenas* Lawsuit is attached hereto as Exhibit E.

26. On March 7, 2017, numerous tenants of the subject premises filed a lawsuit, styled *Laura Shapiro et. al. v. Moran Ben Neman, et. al*., Los Angeles Superior Court, Case No. BC653531 (the "*Shapiro* Lawsuit"). The operative complaint in the *Shapiro* Lawsuit is the Third Amended Complaint, which was filed on July 3, 2018. A true and correct copy of the Third Amended Complaint in the *Shapiro* Lawsuit is attached hereto as Exhibit F. The *Shapiro* plaintiffs assert that, among other things, Defendants "converted a warehouse into a mixture of residential and commercial units without obtaining a certificate of occupancy and Certificate of Rent Registration…for that use, rented those units to unsuspecting tenants such as the Plaintiffs, and then forced those tenants to leave when agencies of the City of Los Angeles discovered the illegal conversion of the warehouse." The *Shapiro* plaintiffs allege that they were residential tenants at the subject premises at various times beginning as early as 2009.

27.     On August 8, 2018, James Ryan Jeffs filed a complaint in Los Angeles Superior Court, Case No. BC716950, styled *James Ryan Jeffs v. Sky High Investments Company, LLC* (the "*Jeffs* Lawsuit").  Mr. Jeffs alleges that he moved into a loft at 937 E. Pico Boulevard in Los Angeles in early 2014 and was a "residential tenant."  Mr. Jeffs claims that he was a victim of Defendants' scheme to profit from illegal conversion of the units into residential apartments and that Defendants wrongfully collected rent despite the illegal status of the buildings.  Mr. Jeffs also claims that on September 6, 2016 he fell from a dangerous and unpermitted staircase in his loft, suffering injuries.  A true and correct copy of the complaint in the *Jeffs* Lawsuit is attached hereto as Exhibit G.

28.     On October 24, 2018, Kevin Mallory filed a complaint in Los Angeles Superior Court, Case No. 18STCV02215, styled *Kevin Mallory v. Sky High Investments Company, LLC, et al.* (the "*Mallory* Lawsuit").  Mr. Mallory alleges that he was a residential tenant at the subject premises since September 2013 and was "entirely unaware of Defendants' unlawful conversion of the building."  Mr. Mallory claims that he experienced severe habitability problems and suffered through constant construction during his time at the property caused by defendants' attempts to "to stuff more people into the building by creating more and more spaces to rent."  A true and correct copy of the complaint in the *Mallory* Lawsuit is attached hereto as Exhibit H.

29.     Defendants tendered the *Shapiro* Lawsuit to Travelers on August 8, 2018.  Defendants tendered the *Duenas*, *Jeffs*, and *Mallory* Lawsuits to Travelers on December 13, 2018.

30.     On or about May 22, 2019, Travelers accepted Defendants' tenders of defense of the *Duenas*, *Shapiro*, *Jeffs*, and *Mallory* Lawsuits (collectively, the "underlying lawsuits.")

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief - Rescission)

31. Travelers incorporates herein by reference, as if fully restated, paragraphs 1 through 30 above.

32. During the process of applying for insurance, Defendants misrepresented, or, in alternative, failed to disclose or concealed that the subject premises were occupied by residential tenants.

33. At the time Defendants made these representations, or, in alternative failed to disclose or concealed of facts, they knew that these representations were false.

34. A truthful description of the nature of the occupancy of the subject premises was material to Travelers' evaluation of the insured risk and to its determination of whether it would issue insurance coverage for the subject premises.

35. Travelers justifiably relied on the information provided by Defendants in the underwriting process, including the representations, or in alternative, the non-disclosure or concealment of facts relevant to the occupancy of the subject premises. At the time Defendants made such representations and thereafter, Travelers did not know these representations were false and were unaware of the non-disclosure or concealment of facts.

36. In reliance on and under the mistaken belief of fact caused by misrepresentations, omissions, and concealment of facts by Defendants, Travelers issued the Travelers Policies to Defendants. The false and misleading representations, or, in alternative, the non-disclosure or concealment of facts by Defendants in the underwriting process were material and, had Travelers known the true facts, Travelers would not have issued the Travelers Policies to Defendants, and/or Travelers would have issued policies with a different premium, and/or would have issued policies with different terms and conditions.

37. As a result of Defendants' material misrepresentations, omissions, and concealment of facts, Travelers has and will suffer irreparable and substantial harm and injury if the Travelers policies are not rescinded, in that Travelers has incurred and will incur attorneys' fees and other expenses in connection with the defense of Defendants in the underlying lawsuits, and may incur indemnity which may be paid in connection with the underlying lawsuits.

38. Travelers is entitled to an adjudication and judgment declaring that the Travelers policies are rescinded and void *ab initio* and that Defendants, and any and all other persons or entities entitled to claim under the Travelers Policies, are not entitled to any benefits thereunder with respect to the *Duenas*, *Shapiro*, *Jeffs*, and *Mallory* Lawsuits, and any other lawsuits or claims which have been or may hereafter be brought against any person or entity qualifying to claim against Travelers under the Travelers Policies.

39. Travelers hereby offers to return to Defendants all benefits conferred on it by reason of the Travelers Policies and demands that the Defendants return all benefits paid by Travelers by reason of the Travelers Policies, including all attorneys' fees and other expenses paid by Travelers in connection with the *Duenas*, *Shapiro*, *Jeffs*, and *Mallory* Lawsuits.

**SECOND CLAIM FOR RELIEF**

**(Reimbursement)**

40. Plaintiffs allege and incorporate herein by reference Paragraphs 1 through 39, inclusive, of this Complaint as though set forth herein in full.

41. Travelers has incurred and will incur attorneys' fees and other expenses in connection with the defense of Defendants in the *Duenas*, *Shapiro*, *Jeffs*, and *Mallory* Lawsuits, and may incur indemnity which may be paid in connection with the underlying lawsuits.

42. Travelers has no obligations under the Travelers Policies because they are void *ab initio* on the basis of the material misrepresentations or concealments

made during the application and underwriting process, and therefore Travelers has an equitable and quasi-contractual right to be reimbursed by Defendants for some or all attorneys' fees, costs, and other expenses including any indemnity which already has been paid or may be paid or incurred by Travelers in the defense and/or settlement of the underlying lawsuits pursuant to *Buss v. Superior Court*, 16 Cal. 4th 35, 65 (1997), *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643 (2005), and related cases.

## PRAYER

WHEREFORE, Travelers prays:

1. For an adjudication and judgment confirming that the Travelers policies are rescinded and void *ab inito;*

2. For a judgment that, by reason of the rescission of the Travelers policies, Travelers is entitled to reimbursement from Defendants, and each of them, for some or all sums expended in defense or settlement or satisfaction of a judgment in the underlying lawsuits.

3. For damages according to proof;

4. For costs of suit incurred herein; and

5. For such other further relief as this Court may deem just and proper.

Dated: October 9, 2019         CLYDE & CO US LLP

By:     */s/ Yevgenia A. Wiener*
          Alexander E. Potente
          Yevgenia Altman Wiener
          Attorneys for Plaintiff
          THE TRAVELERS INDEMNITY
          COMPANY OF CONNECTICUT

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all matters to which it is so entitled.

Dated: October 9, 2019          CLYDE & CO US LLP

By:   */s/ Yevgenia A. Wiener*
          Alexander E. Potente
          Yevgenia Altman Wiener
          Attorneys for Plaintiff
          THE TRAVELERS INDEMNITY
          COMPANY OF CONNECTICUT